Hearing Date: December 14, 2016
Hearing Time: 2:00 p.m.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                                                                    Case# 16-43823-cec
                                                                                              Hon. Carla E. Craig

    ADAM DEVELOPERS ENTERPRISES, INC.,

    Debtor.
------------------------------------------------------------------X

### MOTION OF THE NEW YORK STATE OFFICE OF PARKS, RECREATION AND HISTORIC PRESERVATION FOR A DETERMINATION THAT THE AUTOMATIC STAY DOES NOT APPLY TO THE STATE CONTRACT, OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

The New York State Office of Parks, Recreation and Historic Preservation ("Parks"), by its attorney, Eric T. Schneiderman, Attorney General of the State of New York, respectfully submits its motion and the Declaration of Stephen McCorkell ("McCorkell Decl."), for entry of an order determining that the automatic stay does not apply to the contract between Adam Developers Enterprises, Inc. ("ADE" or "Debtor") and Parks ("State Contract") because Parks terminated the State Contract prior to the commencement of this bankruptcy case ("Motion"). In the alternative, Parks requests relief from the automatic stay to terminate the State Contract under 11 U.S.C. § 362(d)(1) because of ADE's incurable, non-monetary material defaults of the State Contract.

### PRELIMINARY STATEMENT

By letter dated August 23, 2016 ("August 23 Letter"), Parks (i) terminated the State Contract because ADE failed to perform the work in accordance with the State Contract's terms, causing significant delay to the reconstruction of the Roberto Clemente State Park Upper Plaza ("Project"), and (ii) directed Ironshore Indemnity, Inc. (the "Surety") to complete the Project and take over the Project site ("Site").

Despite the August 23 Letter's unambiguous directives, the Debtor commenced this bankruptcy case one day later in an effort to retain the State Contract as an asset of its estate and secure the benefit of the automatic stay. The Court, however, should reject the Debtor's transparent efforts and determine that the automatic stay does not apply to the State Contract because Parks terminated the State Contract prior to the commencement of the bankruptcy case.

Moreover, to the extent the Court concludes that the automatic stay applies to the State Contract, cause exists to lift the automatic stay so that Parks may terminate the State Contract. As established by the McCorkell Declaration, the Debtor materially breached the State Contract and cannot cure these material, non-monetary defaults. This constitutes 'cause' for relief from the automatic stay under Bankruptcy Code section 362(d)(1).

Accordingly, the Court should grant Parks' Motion.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### I. Parks Awards The State Contract To ADE In July 2015

2. On or about May 21, 2015, ADE submitted a bid for the reconstruction of the Upper Plaza ("Work") at the Roberto Clemente State Park, a recreation complex situated on twenty-five acres that annually serves 1 million residents in Bronx County, New York. McCorkell Decl. ¶¶ 3-4.

### II. The State Contract Requires ADE To Complete The Project By November 22, 2016

3. The State Contract expressly provides that it "may not be modified except in accordance with the General Conditions." McCorkell Decl. Ex. E, Art.1.3, p. 94. The State

Contract also provides that "All time limits set forth in [the State] Contract are of the Essence." Id., Art. 14.1, p. 108.

4.  On or about July 31, 2015, the Surety and ADE executed a Performance Bond ("Bond") in which both entities bound themselves for the performance of the State Contract. McCorkell Decl., ¶¶ 6-7, Ex. B, Bond. Charles P. Moran served as the Surety's representative during the Project. Id. The Bond includes a Power of Attorney and designates Mr. Moran as an "Attorney-in-Fact" authorized "to make, execute, seal and deliver for, and on its behalf as surety, any and all bonds, undertakings or other writings obligatory in nature of a bond." McCorkell Decl., ¶ 7.

5.  On or about August 25, 2015, the New York State Office of the Comptroller approved the State Contract. ADE agreed to complete the Project in "no later than 455 days." Therefore, ADE agreed to complete the Project by November 22, 2016. After that date, if the Project was not completed, liquidated damages in the amount of $2,000.00 a day begin to accrue against ADE. McCorkell Decl., ¶ 5. As of the date of the Debtor's chapter 11 petition, the Debtor had only completed approximately 22% of the Work required by the State Contract. McCorkell Decl., ¶ 14.

### III. The State Contract Authorizes Parks To Terminate The Contract For Cause If ADE Fails to Perform the Work in Accordance With The Terms Of The State Contract

6.  The State Contract authorizes Parks to terminate the contract for cause. Pursuant to Article 14.2.6, cause includes inter alia,:

> If [ADE] fails to perform the Work in accordance with the Contract Documents, including, but not limited to, failure to supply sufficiently skilled workers, or suitable materials or equipment, or failure to adhere to the progress schedule established under Article 5.1 as revised from time to time or failure to submit an updated schedule as required by Article 5.2.

3

McCorkell Decl., Ex. E, Art. 14.2.6, p. 109.

      7.     Furthermore, pursuant to Article 14.3:

> If in the judgment of the Director, the Contractor fails or refuses to prosecute the Work in accordance with the Contract, or fails to complete the Work within the time provided by the Contract, the Director may terminate the Contract by written notice to the Contractor in the manner set forth in Article 27.2 herein and to the Surety in the manner set forth in the Performance Bond. In such event, the Director shall direct the Surety to complete the Work.

Id., Art. 14.3. With respect to "notice," Article 27.2 provides: "Unless otherwise indicated in these General Conditions, all notices permitted or required hereunder shall be in writing and shall be transmitted either: (i) via certified or registered United mail, return receipt requested; (ii) by facsimile transmission; (iii) by personal delivery; (iv) by expedited delivery service; or (v) by e-mail. Id., Art. 27.2, p. 125. "Notice" is not otherwise defined by the State Contract.

## IV. The State Contract Defines ADE's Remedy For Wrongful Termination As Solely Monetary Damages

      8.     The State Contract also defines ADE's remedy in the event of a wrongful termination. Pursuant to Article 14.7, "[i]f after notice of termination of the Contract, it is determined for any reason that the Contractor was not in default or that the delay was excusable, the rights and obligations of the parties shall be the same as if the notice of termination had been issued pursuant to the termination for convenience clause." McCorkell Decl., Ex. E, Art. 14.7, p. 110. A contract that is terminated for convenience – in contrast to one terminated for cause – entitles the contractor to inter alia costs incurred up to the effective date of such termination and the cost of settling and paying claims arising out of the termination of work under subcontracts. Id., Art. 15.1, p. 111-12.

9. Thus, even if the New York State Court of Claims were to find that Parks wrongfully terminated the State Contract, ADE would only be entitled to costs to date. ADE, however, would not be entitled to reinstatement of the State Contract nor entitled to another opportunity to perform under the State Contract.

## V. ADE Breached The State Contract

10. As more fully set forth in the McCorkell Declaration, ADE materially breached the State Contract by failing to complete the Work in accordance with the State Contract's terms causing significant delay to the completion of the Project and damages to New York State including inter alia:

- failed to have proper and competent Site supervision under Article 7 of the State Contract;

- consistently failed to supply sufficiently skilled workers to the Site which caused delay and poor construction, i.e., ADE installed doors backwards, and failed to protect the Site from inclement weather resulting in water damage.

- during its Work on the Project, ADE consistently failed to submit timely and accurate Submittals, including Shop Drawings, and Project Schedules in violation of Article 4, and 5 and the General Requirements of the State Contract which further delayed the Project;

- accepted delivery of defective materials, including steel, for the Project; and

- after eleven months at the Site, completed only 22% of the Work, and thus failed to complete the Work in accordance with the terms of the State Contract which required complete performance by November 22, 2016.

McCorkell Decl., ¶¶ 17-37; Exs. F-M. Moreover, ADE failed to remedy its numerous defaults, and these breaches have damaged New York State because the State has, and will, incur significant monetary damages. Id., ¶¶ 38-40.

**VI.    Parks Terminates The State Contract And Directs The Surety To Take Over The Project Pursuant To The Performance Bond**

11.    By letter dated August 23, 2016 ("August 23 Letter") - addressed to the Debtor's principal and the Surety's representative Charles Moran, and sent by electronic and U.S. postal mail on August 23, 2016 in accordance with Article 27.2 of the State Contract - Parks terminated the State Contract and stated:

> As per the conferences we held to discuss this project on May 23, 2016 and most recently on July 27, 2016, [Parks] is notifying Adam Developers Enterprises that they have failed to supervise the work of subcontractors or employ proper means and methods to complete the work for this contract in a manner that is consistent with the approved drawings and specifications. It is our finding that the project is now in default.

McCorkell Decl., ¶ 37, Ex. N.

14.    Parks also informed ADE and the Surety that because of ADE's default, the Surety - not ADE - would complete the Project pursuant to the Performance Bond. The August 23 Letter further provides:

> Mr. Moran – [Parks] is requesting that your firm immediately secure and waterproof the site and coordinate with our resident Construction Manager as needed to protect the existing facility. Within a week, we would like to meet with you to discuss the manner in which this project will be managed from this point forward.

McCorkell Decl., Ex. N.

15.    The August 23 Letter declaring ADE in default of the State Contract and directing the Surety to take over the Project thus serves as the written notice of termination required by Article 14.3, and Article 27.2. The State Contract requires no further action from Parks in connection with the termination of the State Contract.

### VII. ADE Files A Voluntary Petition Under Chapter 11

12. On August 24, 2016 - one day after ADE's principal received the August 23 Letter - ADE filed a voluntary petition under chapter 11 of the Bankruptcy Code ("Petition") and listed the State Contract as an executory contract. See Dckt. No. 1. According to the September 9, 2016 declaration of the Debtor's principal, Mr. Iqbal Ahmad, ADE filed the Petition because New York State ("State") and New York City ("City") agencies "caused the debtor significant financial distress" in connection with four construction projects sponsored by the State and the City. See Dckt. No. 11, ¶ 11.

13. Mr. Ahmad, also alleges that the August 23 Letter was "wrongful" because he was "given no prior notice" and, without any reference to the terms of the State Contract, was "in violation of contract specifications." Id., at 9. Lastly, Mr. Ahmad admits that he filed the Petition because of Parks' August 23 Letter. Id.

## ARGUMENT

## POINT I

### THE AUTOMATIC STAY DOES NOT APPLY TO THE STATE CONTRACT

**A. The State Contract is Not An Executory Contract Because Parks Terminated It Prior to the Commencement of the Bankruptcy Case**

14. Because Parks terminated the State Contract in accordance with its terms before the Debtor commenced this bankruptcy case, the State Contract is not an executory contract and the automatic stay does not apply.

15. Executory contracts that are terminated prior to the filing of the bankruptcy petition do not become property of the estate. Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984). The mere filing of a bankruptcy petition does not enhance a debtor's contract

7

rights or diminish its obligations. In re M.J. & K Co., Inc., 161 B.R. 586, 593 (Bankr. S.D.N.Y. 1993) ("Contracts that have been effectively terminated prior to the filing of a Chapter 11 petition cannot be revived by the bankruptcy court."); In re Beck, 5 B.R. 169, 171 (Bankr. D. Hawaii 1980) (licensor gave notice that license would terminate in sixty days during which the licensee filed ch. 11 petition and court held that automatic stay did not apply because licensor "gave [pre-petition] notice of termination and no further action was necessary to result in the expiration of the License Agreements"). "[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy-no more, no less." Moody, 734 F.2d at 1213 quoting 11 U.S.C. § 541(a) (debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of a case").

16.     In Moody, supra, the debtor entered into a contract with Amoco Oil Company, under which Amoco served as the supplier and franchisor for the debtor's retail petroleum dealerships. After the debtor's bank notified Amoco that checks given to it by the debtor as payment under the contract would not be honored, Amoco sent the debtor a letter demanding that, pursuant to the contract, the debtor cure the dishonored checks within five days. Moody, 734 F.2d at 1205-06. When the debtor failed to cure this default, Amoco mailed a termination notice, noting that the default had not been cured in the requisite period and announcing that, pursuant to federal statute, "cancellation is to become effective ninety days from the date of this letter." Id. One day after receiving the email with the termination notice, the debtor filed a chapter 11 petition. Id. The Seventh Circuit held that the contract was effectively terminated pre-petition and could not be assumed by the debtor under 11 U.S.C. § 365 because Amoco had taken the last act necessary to effect termination of the contract prior to the bankruptcy filing.

17.     The Seventh Circuit's determination that Amoco had terminated the contract hinged on the existence of two facts: (1) the debtor's right to cure expired when Amoco mailed the termination notice (pre-petition), and (2) termination was automatic after ninety days and Amoco was not required to send any further communication to effect the termination. These two facts together made termination of the Moody contract "complete and not subject to reversal." Moody, 734 F.2d at 1212.

18.     Here, Parks has taken all necessary steps under the State Contract to effect its termination prior to the Debtor's Petition. Parks sent the Debtor, by mail and electronic mail, the August 23 Letter which declared the Debtor in default of the State Contract and directed the Surety to secure the Site and take over the completion of the Project pursuant to Article 14.3 and Article 27.2 of the State Contract.  The State Contract does not require Parks to do anything more to effectuate termination.  Under these circumstances, it is black letter law that the automatic stay of section 362 of the Bankruptcy Code is simply not implicated. See, e.g., In re Margulis, 323 B.R. 130, 133 (Bankr. S.D.N.Y. 2005) ("where the debtor defaults under a contract prior to bankruptcy, and the non-debtor party serves a termination notice that takes effect without further action at a future date, the filing of a bankruptcy petition between the giving of notice and termination date does not toll or stay the termination."); In re Comp III, Inc., 136 Bankr. 636, 639 (Bankr. S.D.N.Y. 1992) ("Where an executory contract has been terminated in accordance with its terms prior to bankruptcy, section 365(e)(1) does not authorize the bankruptcy court to reach beyond the veil of the petition to reinstate the contract.").

19.     The termination of the State Contract is "complete and not subject to reversal" and the August 23 Letter informing Debtor of its default serves as adequate notice of termination. There is no "cure period" in the State Contract and "notice" of termination is

"deemed to have been given either at the time of personal delivery or … in the case of … email, upon receipt." McCorkell Decl., Ex. E, Art. 27.2(b). Parks' termination was "complete and not subject to reversal either under the terms of the contract or under state law." Moody, 734 F.2d at 1212. ADE has no right to cure after it had received the August 23 Letter and the State Contract included no conditions precedent to termination other than notice and receipt.

20. "It is a settled principle of law that a contractual termination provision survives the filing of a petition in bankruptcy and neither a trustee nor a debtor in possession acquires any rights to otherwise alter the terms of the contract or to revive it." In re Benrus Watch Co., 13 B.R. 331, 334 (Bankr. S.D.N.Y. 1981) (licensor had "right to terminate the license … by giving notice of such termination of licensee" and in accordance with the contract, a letter "of the debtor's default and of [licensor's] intention to pursue its remedies under the contract" was sufficient to terminate the contract. Id. at 333) (emphasis supplied)).

21. Parks' decision to terminate the State Contract for cause is not subject to "reversal" under the terms of the State Contract, and is therefore final. See e.g., WILJEFF, LLC v. United Realty Mgt. Corp., 82 A.D.3d 1616, 1618-19 (4th Dep't 2011) ("effective notice of termination of any contract" does not require "a recitation of each and every specific provision of the contract that allegedly has been violated"). "Where a contract has been validly terminated pre-bankruptcy, the debtors' rights to continued performance under the contract have expired." Moody, 734 F.2d at 1214. Thus, because Parks terminated the State Contract in accordance with its terms on August 23, 2016, the automatic stay does not apply.

## POINT TWO

### IN THE ALTERNATIVE, THE COURT SHOULD LIFT THE AUTOMATIC STAY FOR CAUSE PURSUANT TO 11 U.S.C. § 362(d)

22. Section 362 of the Bankruptcy Code enjoins "any act to obtain possession of property of the estate," which includes prohibiting a non-debtor party to an executory contract from terminating that contract without approval from the Court. See 11 U.S.C. § 362(a)(3). Section 362(d)(1) of the Bankruptcy Code further provides that a Court "shall grant relief from the stay ... (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define "cause." In re Sonnax Industries, Inc., 907 F.2d 1280, 1285 (2d Cir. 1990). Rather, the "legislative history indicates that the 'facts of each request will determine whether relief is appropriate under the circumstances.'" Id. at 1286 (citation omitted). Whether "cause" exists is decided on a case-by-case basis. In re Mazzeo, 167 F.3d 139, 142 (2d Cir. 1999) ("Thus the facts of each request will determine whether relief is appropriate under the circumstances."); In re Balco Equities Ltd., Inc., 312 B.R. 734, 748 (Bankr. S.D.N.Y. 2004) ("cause" is determined on a case-by-case basis).

23. The burden of proof on a motion to lift or modify the automatic stay under 11 U.S.C. § 362(d)(1) is a shifting one. Sonnax, 907 F.2d at 1285. The movant must initially produce evidence establishing "cause" for relief. M.J. & K. Co., 161 B.R. at 590. Once the movant establishes cause, the burden of proof shifts to the Debtor on all other issues. See 11 U.S.C. § 362(g)(2).

**A. The Court Should Grant Relief From The Automatic Stay Because of ADE's Incurable, Non-Monetary Material Breach of the State Contract**

24. Courts hold that material, non-monetary defaults under an agreement, such as the failure to follow required operating procedures or to complete timely performance of the

11

contract, would be impossible to cure and constitute grounds to lift the automatic stay under 11 U.S.C. § 362(d). "Where the default is non-monetary and is not curable, the debtor is precluded from assuming an executory contract only if the default was material or if the default caused 'substantial economic detriment.'" In re New Breed Realty Enters., 278 B.R. 314, 321 (Bankr. E.D.N.Y. 2002) (J. Craig); see In re Clearwater Natural Res., LP, 2009 Bankr. LEXIS 2461, at *4 (Bankr. E.D. Ky. July 23, 2009) (materiality and economic significance of default is measure of whether debtor may assume a contract in which a non-curable, non-monetary default has occurred).

25.   Determining whether a default exists under an executory contract for Section 365(b)(1) purposes depends upon state law. In re Bradlees Stores, Inc., 2001 U.S. Dist. LEXIS 14755, at *24 (S.D.N.Y. Sept. 20, 2001). Under New York law, a contractual breach is material "if it is so substantial as to defeat the purpose of the transaction." In re Nemko, 163 B.R. 927, 938 (Bankr. E.D.N.Y. 1994) (internal citations omitted).

26.   In In re New Breed Realty Enters. Inc., this Court lifted the automatic stay and permitted a non-debtor party to collect escrowed funds after determining that the debtor was barred from assuming the executory contract due to its inability to cure material non-monetary defaults. This Court considered a debtor's failure to close on a purchase agreement by a date certain as required by the relevant agreement and concluded that the debtor's failure was "a non-monetary default which cannot be cured because it is a historical fact." 278 B.R. at 320 citing inter alia In re Claremont Acquisition Corp., Inc., 113 F.3d at 1029, 1033 (9th Cir. 1997) and In re Toyota of Yonkers, Inc., 135 B.R. 471, 477 (Bankr. S.D.N.Y. 1992) (debtor's failure to operate its car dealership for seven consecutive days was a default that was incapable of cure or remedy because it was grounds for termination of the franchise agreement under applicable state

law and the debtor could not undo this historical fact);  See, e.g., In re Williams, 299 B.R. 684, 686-87 (Bankr. S.D. Ga. 2003) (where debtor lessee breached a provision of a truck lease agreement which prohibited the use of a truck for transportation work for third parties, the court determined that curing the default was impossible because the breach was a "historical fact that cannot be altered" and lifted the stay for the lessor to exercise default remedies).

27. Here, the Debtor's historical defaults are incapable of being cured and are material because they go to the essence of the State Contract - the timely completion of the Project in accordance with the State Contract's terms. As established by the McCorkell Declaration, ADE inter alia: (i) failed to have a Contractor's Representative present at the Site at all times with the authority to act on behalf of the Contractor; (ii) consistently failed to supply sufficiently skilled workers to the Site; (iii) failed to provide proper and timely submissions of shop drawings which delayed the delivery of materials and performance of the Work; (iv) consistently failed to submit timely Project Schedules which also delayed performance of the Work; (v) accepted defective materials, including defective steel beam and steel joists that did not conform to the approved steel shop drawings; (vi) failed to propose Submittals in accordance with Section 013300 and 013301 of the General Requirements; and (vii) failed to complete the Work in accordance with safety standards mandated by Section 01100 of the General Requirements. See McCorkell Decl. ¶¶ 13-34.

28. Despite the State Contract's provision that "[a]ll time limits set forth" in the State Contract "are of the Essence," and Debtor's agreement to complete work by November 22, 2016, only 22% of the Work was completed by August 23, 2016. Id., Ex. E, Art. 14.1, p. 108. Indeed, as of November 22, 2016, liquidated damages begin to accrue in the amount of $2000.00 a day. Kleinberg Elec., Inc. v. E-J Elec. Installation Co., 111 A.D.3d 410 (1st Dep't 2013);

(construction contract "explicitly provide[d] that time is of the essence" and "delay or failure to meet scheduling requirements warrants termination"); In re Eagle Creek Subdivision LLC, 397 B.R. 758, 763 (Bankr. E.D.N.C. 2008 (executory contract could not be assumed because the debtor could not cure the historical and material default of failing to complete construction by the contract's deadline).

29. In light of the incurable, material defaults under the State Contract, the Debtor cannot assume the State Contract due to the historical defaults (even assuming that the State Contract has not already been validly terminated by Parks, which Parks asserts it has been). Bell v. Alden Owners, 199 B.R. 451 (S.D.N.Y. 1996) ("debtor's inability to assume a lease constitutes 'cause' for relief from the automatic stay under Bankruptcy Code section 362(d)(1)") citing In re G.S.V.C. Restaurant Corp., 10 B.R. 300 (S.D.N.Y. 1980). Accordingly, ADE's material, incurable defaults under the State Contract requires lifting of the automatic stay to allow Parks to immediately terminate the State Contract.

## CONCLUSION

30. For all of the foregoing, and those reasons set forth in the accompanying McCorkell Declaration, Parks respectfully requests that this Court issue an order determining that the automatic stay does not apply to the State Contract, or, in the alternative, grant Parks relief from the automatic stay to terminate the State Contract.

Dated: November 23, 2016
New York, New York

                               Respectfully submitted,

                               ERIC T. SCHNEIDERMAN
                               Attorney General of the
                               State of New York
                               Attorney for The New York State

                    Office of Parks, Recreation and
                    <u>Historic Preservation</u>

                    By:<u>/s/ Paulina Stamatelos</u>
                    Paulina Stamatelos (PS-5174)
                    Assistant Attorney General
                    120 Broadway - 24th Floor
                    New York, New York 10271
                    (212) 416-8659
                    Paulina.Stamatelos@ag.ny.gov

To:

Gabriel Del Virginia
30 Wall Street,
12th Floor
New York, NY 10005
(212) 371-5478
gabriel.delvirginia@verizon.net
Attorney for the Debtor

William Curtin
Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014