UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
In re:                                                    Case# 16-43823-cec
                                                          Hon. Carla E. Craig

    ADAM DEVELOPERS ENTERPRISES, INC.,

        Debtor.
-------------------------------------------------------------------X

## DECLARATION OF STEPHEN MCCORKELL

    I, Stephen McCorkell, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury as

follows:

    1.    I serve as the Capital Facilities Manager in New York State's Office of Parks,

Recreation and Historic Preservation ("Parks") for its New York City Region.  I am a licensed

Landscape Architect in the State of New York and have worked approximately twenty-four years

for Parks.  I submit this declaration based on personal knowledge and my review of files

maintained by Parks, in support of Parks' motion for an order determining that the automatic stay

does not apply to the contract between Adam Developers Enterprises, Inc. ("ADE" or "Debtor")

and Parks ("State Contract"), or, in the alternative, for relief from the automatic stay.

    2.    I inter alia, procure and then supervise capital construction contracts awarded by

Parks.  I supervise and train regional technical staff, and direct the planning and performance of

construction projects to adhere to Parks' policies, applicable statutes, codes and regulations, and

the State Contract.

## I.    Parks Awards The State Contract To ADE

    3.    On or about May 21, 2015, ADE submitted a bid for the reconstruction of the

Upper Plaza ("Work") at the Roberto Clemente State Park ("Site").

    4.    Located in Bronx, County, along the Harlem River, Roberto Clemente State Park

is a recreation complex situated on twenty-five acres that annually serves 1 million residents (mostly children) from the surrounding neighborhood in a county whose residents have the lowest median income in New York State. The Site's aging and damaged infrastructure suffers from inter alia, water intrusion, safety issues and lead contamination that require capital improvements.

5.      By letter dated May 29, 2015, Parks accepted ADE's General Construction bid in the amount of s $6,241,370.00 for the reconstruction of the Upper Plaza ("Project"). Annexed as Exhibit A is a true and correct copy of the May 29, 2015 letter.

6.      On or about July 31, 2015, Ironshore Indemnity Inc. ("Surety") and ADE executed a Performance Bond ("Bond") in which both entities bound themselves for the performance of the State Contract. Annexed as Exhibit B is a true and correct copy of the Bond.

7.      Charles P. Moran served as the Surety's representative during the Project. The Bond includes a Power of Attorney and designates Mr. Moran as an "Attorney-in-Fact" authorized "to make, execute, seal and deliver for, and on its behalf as surety, any and all bonds, undertakings or other writings obligatory in nature of a bond." Id.  By email dated April 26, 2016, Mr. Moran wrote to me and introduced himself as the Surety's "representative." Annexed as Exhibit C is a true and correct copy of this email.

8.      On or about August 25, 2015, the New York State Office of the Comptroller ("NYS Comptroller") approved the State Contract.  ADE agreed to inter alia complete the Project in "no later than 455 days." Thus, ADE agreed to complete the Project by November 22, 2016. After that date, if the Project was not completed, liquidated damages in the amount of $2,000.00 a day begin to accrue against ADE. Annexed as Exhibit D is a true and correct copy of the State Contract's signature page.

9.      Thereafter, Parks and the NYS Comptroller approved separate electrical, mechanical and plumbing contracts in connection with the Project.  Work under those contracts is predicated upon the performance by ADE in accordance with the timetable set forth in the State Contract.  Work in connection with those contracts has been negatively impacted by ADE's delay in performing the State Contract.

**II.      The State Contract**

10.      I serve as the "Director's Representative" under the State Contract.  A true and correct copy of the State Contract is annexed at Exhibit E.  Ex. E, Art. 2.12, p. 95.  Pursuant to the State Contract, I enjoy "complete charge of the Work and … exercise full supervision and direction of the Work" in accordance with the State Contract.  Id.  The State Contract defines Work as "the total sum of labor, supervision, materials and equipment necessary for the proper completion of the Contract as set forth in the Contract Documents."[1]  Id., Art. 2.35, p. 97.

11.      ADE serves as the "Contractor" under the State Contract and is responsible for "executing the [State] Contract."  Id., Art. 2.8, p. 96.

12.      Parks engaged LiRo Program and Construction Management, P.C. ("LiRo") to serve as the Construction Manager for the Project. LiRo's duties as the Construction Manager include: (i) inspection of the Work; (ii) administrative support for the Project including managing and documenting bi-weekly construction meetings; (iii) ensuring that contractors and subcontractors perform in accordance with the State Contract, drawings and specifications; maintaining the payment, filed order, and change order logs for the project; and (iv) ensuring the Site is managed by the contractors and subcontractors in a safe manner.  Parks and LiRo work together to manage a construction project and LiRo also serves as Parks' Site representative.

---

[1] Section 01100 of the State Contract's General Requirements defines the specific Work to be performed by ADE.  See Ex. E, Section 01100, at p. 250-51.

## III.    ADE Has Failed to Perform 78% of the Project

13.    "All time limits set forth" in the State Contract "are of the Essence." Ex. E, Art. 14.1, at p. 108.  ADE agreed to complete the Work by November 22, 2016.

14.    ADE completed only 22% of the Project before Parks declared a default and terminated the contract for cause on August 23, 2016.

15.    A summary of the work completed by ADE includes: removal of interior and exterior construction materials as part of demolition and abatement; installation of temporary support facilities to control traffic and protect the public during construction phases (e.g., fencing and signage); reinforcement of a small portion of the overall steel required to be reinforced; delivery of a portion of the joists and structural steel; and submittals of only 60% of the required plans, drawings and specifications for the work and materials ("Submittals").

16.    The remaining 78% of the Work to be completed includes the most challenging and laborious elements of the Project.  A summary of this Work includes inter alia: (i) erecting steel beams and joists; (ii) installing steel and concrete decking; (iii) installing structural concrete and decorative architectural concrete throughout the Site; (iv) waterproofing the Site; (v) erecting permanent signage, ramp, concrete stairs, railings and expansion joints; (vi) fireproofing the Site; (vii) erecting interior framing, doors and general "finish work"; (viii) completing brick façade work; and (ix) landscaping the Site.

## IV.    ADE Materially Breached the State Contract

### A.    ADE Materially Breached Articles 4, 5, 7, and 10 of the State Contract

17.    The General Conditions set forth the State Contract's terms in twenty-seven Articles.

4

18.    Article 7 of the State Contract sets forth ADE's responsibilities with respect to the "Contractor's Supervision" of the Project and requires ADE to "designate a competent supervisor for the Work to represent the Contractor at the site at all times with authority to act for the Contractor." Ex. E, Art. 7.1, p. 101. ADE breached Article 7 by failing to have a Contractor's Representative present at the Site at all times with the authority to act on behalf of the Contractor.

19.    ADE employed at least four different Contractor's Representatives between September 2015 and August 23, 2016, all of whom failed to fulfill their duties under the State Contract. ADE never gave notice of each new Contractor's Representative and Parks would learn of the new Contractor's Representative when they attended the bi-weekly construction meetings or appeared at the Site. Furthermore, these Contractor's Representatives were consistently unprepared and unable to make any decisions binding ADE. Thus, the Contractor's Representatives were not empowered by ADE with the authority to act for ADE under Article 7 of the State Contract.

20.    Pursuant to Article 7, ADE's "use of any Subcontractor shall not diminish the Contractor's obligations to complete the Work in accordance with the Contract. The Contractor shall control and coordinate the Work of its Subcontractors." Ex. E, Art. 7.3, p. 101. ADE consistently failed to supply sufficiently skilled workers to the Site.

21.    Article 4 of the State Contract addresses "Shop Drawings And Other Submittals" and requires ADE to inter alia "adhere to the submittal and scheduling requirements for Shop Drawings, product data and Samples set out in the Specifications." Id., Art. 4.4, p. 98.

22.    Article 5 of the State Contract addresses the Project's "Schedule" ("Project Schedules") and requires ADE to "deliver to the Director's Representative and receive approval

prior to commencing work, a detailed schedule concerning his or her operations upon the Project on a form acceptable to the Office, which shall indicate completion within the specified time frame, to the satisfaction of the Director's Representative." Id., Art. 5.1, p. 99.

23.    ADE failed to provide proper and timely submissions of shop drawings which delayed the delivery of materials and performance of the Work. ADE consistently failed to submit timely Project Schedules which also delayed performance of the Work.

24.    Article 10 of the State Contract provides inter alia, that the Contractor "shall ... promptly correct any Work the Director's Representative determines does not conform to the Contract Documents .... [and] shall promptly remove rejected material from the Premises." Id., Art. 10.2, p. 103. ADE inter alia, accepted a supporting steel beam and steel joists that did not conform to the approved steel shop drawings. Parks determined that the steel was found to be cracked and defective. Thus, ADE failed to comply with Article 10 of the State Contract.

**B.    ADE Materially Breaches The State Contract's General Requirements**

25.    ADE failed to manage the Project in accordance with the State Contract's General Requirements. See, Ex. E, p. ii, 249-1141. The General Requirements set forth Parks' requirements in connection with how the Work will be performed by ADE. For example, the General Requirements set forth procedures for submitting payment requests, Submittals and Drawings, and lists in significant detail how ADE must execute the State Contract.

26.    ADE failed to comply with Payment Procedures pursuant to Section 012900 of the State Contract because ADE submitted incomplete payment packages. For example, ADE certified payrolls that were incorrect because they did not include all Site personnel or subcontractors that worked on the Project, or listed personnel to be paid in connection with Work they did not perform.

6

27.    ADE failed to propose Submittals in accordance with Section 013300 and 013301 of the General Requirements which further delayed Work. By the eleventh month of the Project – which was supposed to be completed in thirteen months – 40% of the Submittals remained outstanding.

28.    ADE failed to complete the Work in accordance with safety standards mandated by Section 01100 of the General Requirements. ADE "is solely responsible for site safety. All operations shall be conducted in a safe manner and in accordance with all applicable State and Federal Safety Regulations."    See, Ex. E, Section 011000, p. 256.    For example, during the removal of steel members, ADE failed to install proper temporary support.    After failing to correct the issue, a stop work order was issued on August 4, 2016.    Furthermore, during the delivery of the Phase 1 steel beams, ADE did not employ a licensed operator to unload the material and a stop work order was issued on August 5, 2016 due to this unsafe practice.    ADE's operator did not have any training certificates or OSHA training.    ADE also did not have a Job Hazardous Analysis Plan in place.

**C.    Parks Notifies ADE of Its Failure To Perform Pursuant To The State Contract**

29.    In addition to the multiple project meetings where Parks and LiRo expressed their concerns with ADE's execution of the State Contract, as required by the Performance Bond Parks conducted two conferences in May and July 2016 to address ADE's failure to perform in accordance with the State Contract.

30.    On May 13, 2016, Parks conducted a conference at which ADE, the Surety and LiRo participated to voice its concerns with the Project.    Parks explained the confusion surrounding the Project because ADE had appointed multiple individuals to manage the Project who did not have either the authority or the capability to manage all subcontractors on the Site.

Parks reiterated that Project Schedules and Submittals need to be accurate, timely and inclusive of all information regarding construction activities at the Site.

31.    On July 27, 2016, Parks conducted the second conference.  Representatives from ADE, the Surety and LiRo participated.  Parks inter alia, notified ADE that after ten months of Work, the Project was behind schedule.  Parks explained to ADE that its failure to enter into contracts with subcontractors to perform Work such as waterproofing the Site, further delayed the Project.  Parks also expressed concern that ADE's Submittals remained outstanding and ADE continued to propose Submittals that were incomplete.   As a result, Parks rejected these Submittals which caused further delay to the Project.  Parks also noted that Work relating to signage and roofing could progress and ADE's delay was without any basis.  Lastly, Parks voiced concern over the Project's steel work.

### D.  ADE Fails to Remedy Its Breaches of the State Contract

32.    A non-compliance report is a formal document issued to ADE describing substantial nonconformance with the State Contract.   LiRo, at my direction, issued ADE nine non-compliance reports ("NCR") between February 5, 2016 and July 29, 2016.

33.    Of the nine NCRs issued to ADE, eight reports remain open and the issues addressed by the NCRs remain unresolved. Each NCR cites the terms of the State Contract with which ADE failed to comply.

34.    Specifically:

- On February 4, 2016, Parks inter alia, informed ADE that it failed to comply with two drawings resulting in improperly installed doors  damaged and improperly removed ceiling tiles.  A true and correct coy of the February 4, 2016 NCR is annexed as Exhibit F.

- On April 7, 2016, Parks inter alia, informed ADE that it failed to properly install signs to control traffic around the construction zone.  A true and correct copy of the

April 7, 2016 NCR is annexed as Exhibit G. This is the only instance where ADE remedied the errors raised by an NCR.

- On April 19, 2016, Parks inter alia, informed ADE of its failure to have proper and competent Site supervision in violation of Article 7 of the State Contract. A true and correct copy of the April 19, 2016 NCR is annexed at Exhibit H.

- On April 22, 2016, Parks inter alia, informed ADE that its Submittals were incomplete in violation of Article 4 of the State Contract and Sections 013300, 013301. The NCR explained that the Project was now in its eighth month, "past the mid-point, and by now the submittals should be, and were promised to be, about 95% approved. Out of the approximate 400 submittals required for the project … 47 out of 111 have been approved in their entirety." A true and correct copy of the April 22, 2016 NCR is annexed at Exhibit I.

- On May 9, 2016, Parks inter alia, informed ADE that a submitted Progress Schedule was deficient, lacked detail, and "upcoming work has been omitted or the completed work is presented as ongoing" in violation of Section 013200. A true and correct copy of the May 9, 2016 NCR is annexed at Exhibit J.

- On June 29, 2016, Parks inter alia, informed ADE that it failed to protect the building from inclement weather resulting in water damage in violation of Section 011000. A true and correct copy of the June 29, 2016 NCR is annexed at Exhibit K.

- On July 5, 2016, Parks inter alia, informed ADE that it once again failed to protect the building from inclement weather resulting in flooding portions of the building in violation of Section 011000. A true and correct copy of the July 5, 2015 NCR is annexed at Exhibit L.

- On July 25, 2016, Parks inter alia, informed ADE that it violated Section 13100, regarding Project Management and Coordination, and Section 1400, regarding Quality Control, and Article 7 of the State Contract because: (i) ADE only had one project manager working on the Project on a part-time basis which has seriously delayed the Work; (ii) Work continued with inadequate oversight; (iii) Project Schedules and weekly updates continue to be inaccurate and misleading; and (iv) ADE's Site representative is unable to coordinate the Project due to lack of "direct knowledge of" the State Contract. A true and correct copy of the July 25, 2016 NCR is annexed at Exhibit M.

- On July 29, 2016, Parks inter alia, informed ADE that it violated Section 011000, and caused flooding at the Site which forced Parks to issue a stop work order. A true and correct copy of the July 29, 2016 NCR is annexed as Exhibit N.

### V.    Parks Declares ADE in Default of the State Contract

35.    Article 14 sets forth the grounds under which Parks terminates a State Contract for cause.  As the Director's Representative, I found the following grounds support termination of the State Contract: (i) ADE failed to perform the Work in accordance with the State Contract, "including, but not limited to, failure to supply sufficient skilled workers, or suitable materials or equipment, or failure to adhere to the progress schedule"; (ii) ADE disregarded "the authority of the Director's Representative"; and (iii) ADE failed "to prosecute the Work in accordance with the [State] Contract" and failed "to complete the Work within the time provided by the [State] Contract…"  See Ex. E, Art. 14.2.6, 14.2.7, 14.3, p. 109.

36.    On August 23, 2016 Parks declared ADE to be in default ("August 23 Letter") of the State Contract.  A true and correct copy of the August 23 Letter with the cover email is annexed hereto as Exhibit O.

37.    The August 23 Letter provides:

> As per the conferences we held to discuss this project on May 23, 2016 and most recently on July 27, 2016, [Parks] is notifying Adam Developers Enterprises that they have failed to supervise the work of subcontractors or employ proper means and methods to complete the work for this contract in a manner that is consistent with the approved drawings and specifications.  It is our finding that the project is now in default.

Id. The August 23 Letter also directed Mr. Moran, the Surety's representative, to secure and waterproof the Site in anticipation of the Surety's takeover of the Project. Id.

### E.    ADE's Conduct Damages the Interests of New York State

38.    New York State has incurred or will incur the following estimated costs due to ADE's inability to complete the Work in a timely manner:

- New York State will incur approximately up to $49,000 to secure the Site for the winter, protect it from further damage and ensure the safety of patrons;

- New York State has incurred $75,000 for its Construction Manager LiRo to supervise the Work under the State Contract because ADE did not adequately supervise its subcontractors;

- New York State will incur $200,000 to re-engage the Construction Manager LiRo when work commences at the Site;

- New York State has incurred $100,000 for design consultants to review the deficient Submittals proposed by ADE;

- New York State will incur $100,000 to re-engage design consultants to review new Submittals.

39.     In addition, there is a 3% annual inflation rate for labor, equipment and materials in New York City. The separate electrical, mechanical and plumbing contractors have incurred additional costs in mobilizing and demobilizing labor, materials and equipment due to ADE's delay in completing the Project. Bids for new contracts in New York City could include an increase in cost by as much as 30%. Therefore, by not completing the Project, New York State has incurred or will incur additional costs that will come out of Parks' budget.

40.     Furthermore, because it is difficult to calculate the financial loss to New York State and its residents from losing full and complete access to Roberto Clemente State Park from ADE's delay on the Work, in addition to its other remedies under the State Contract and in law and equity to recover costs, the liquidated damages clause of the State Contract requires the State to deduct $2,000 for each day of delay in the physical completion of the work beyond the contract completion date of November 22, 2016.

I declare under penalty of perjury that the foregoing is true and correct.

New York, New York
Dated: November 22, 2016

                                                    /s/ _____
                                                    Stephen McCorkell